WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gregory Allen Stanhope, | No. CV-14-00310-TUC-BPV |
| Petitioner, | **ORDER** |
| v. | |
| Charles Ryan, et al., | |
| Respondents. | |

Pending before the Court is Petitioner Gregory Allen Stanhope's *pro se* Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. (Doc. 1). In accordance with the provisions of 28 U.S.C. §636(c)(1), all parties consented to proceed before a United States Magistrate Judge to conduct any and all further proceedings in this case, including trial and entry of a final judgment, with direct review by the Ninth Circuit Court of Appeals if an appeal is filed. (Doc. 19). For the following reasons, the Court denies and dismisses Petitioner's Petition for Writ of Habeas Corpus.

## I. FACTUAL & PROCEDURAL BACKGROUND

### A. STATE CONVICTION

Petitioner was indicted in Arizona Superior Court, Pima County, cause number

CR08635, on July 6, 1982, and charged with two counts of armed robbery, two counts of kidnapping, two counts of aggravated assault, and one count of burglary. (Reply (Doc. 31), Exh. 1) The following factual and procedural background is taken from the Arizona Court of Appeal's opinion on Petitioner's direct appeal:

> The appellant was found guilty by a jury of two counts each of armed robbery, kidnapping and aggravated assault, and one count of first degree burglary. All of these convictions arose out of an incident at a retail sho[e] store in Tucson on June 23, 1982. The appellant was sentenced to prison for concurrent 21-year terms on each of the robbery counts, concurrent 21-year terms on each of the kidnappings to be served consecutively to the robbery sentences, and concurrent 15-year terms on each of the assaults and the burglary, the latter three sentences to be served consecutively to the robbery and kidnapping sentences.[1]

*State v. Stanhope*, 139 Ariz. 88, 90, 676 P.2d 1146, 1148 (App. 1984).  The appellate court affirmed Petitioner's convictions and sentences. *Id.* Petitioner filed four petitions for post-conviction relief pursuant to Rule 32 of the Arizona Rules of Criminal Procedure in the state court, and unsuccessfully petitioned this Court for a writ of habeas corpus in March 1998. (*See* Answer (Doc. 20) at 3). The Ninth Circuit affirmed this Court's denial of habeas relief in August 2002. *Stanhope v. Stewart*, 2002 WL 1996510 (9th Cir. 2002).

Petitioner initiated a fifth petition for post-conviction relief in state court on June 26, 2000, that was denied in 2001. (Answer, Exhs. A, B). In 2005, Petitioner filed a special action in the trial court alleging due process violations from prison disciplinary proceedings that ended in 2006. (Answer, Exh. C).  On June 1, 2005, Petitioner initiated a sixth post-conviction proceeding in the trial court that was denied in 2007. (Answer, Exhs. D, E.) Petitioner filed a second petition for writ of habeas corpus in this Court in January 2007. (*See* Answer at 4)).  This Court found that Petitioner's due process rights

---

[1] In sum: the sentences imposed on counts 1 and 2 were to be served concurrent with each other and were to commence on December 1, 1982, the date of sentencing; the sentences imposed on counts 3 and 4 were to be served concurrent with each other but consecutive to the sentences imposed on counts 1 and 2, and were to commence upon completion of the sentences imposed on counts 1 and 2; and the sentences imposed on counts 5, 6, and 7 were to be served concurrent with each other but consecutive to the sentences imposed under counts 1 through 4, and the sentences imposed on counts 5, 6, and 7 were to commence upon completion of the sentences imposed under counts 1 through 4.  (Answer, Exh. J (Doc. 21-1 at 11-14)).

had been violated at one prison disciplinary proceeding and ordered that the State remedy the violation by either restoring 60 days of earned release credits ("ERC") or providing Petitioner a new hearing.  (*See id*.).  On November 12, 2012, the Ninth Circuit affirmed, and the State subsequently filed a notice of satisfaction of judgment providing evidence that 60 days of ERC had been restored to Petitioner. (*Id.*).

While Petitioner's appeal of this Court's decision on his second petition for writ of habeas corpus was pending, Petitioner filed a "Motion for Goodtime Jail Credits Pursuant to ARS § 41-1604.07(A)" in state trial court in February 2011. (Reply, Exh. 2).  The court appointed counsel, set a briefing schedule, and a hearing date. (*Id.*).  Two additional motions, unidentified in this record, were subsequently filed by Petitioner and forwarded to his appointed counsel, whom the court referred to as his counsel appointed to represent him in his "Rule 32 proceedings." (Reply, Exh. 3).  On July 12, 2011, Petitioner filed an amended motion asserting that in addition to the ERC to which he was entitled, he was improperly denied a commutation hearing. (Reply, Exh. 4).  The procedural path of this proceeding is discussed in more detail below.   Ultimately, the trial court denied Petitioner's request for relief on the merits on October 17, 2012.  (Answer, Exh. P). The court further denied Petitioner's motion for rehearing. (Answer, Exhs. Q-R).

Petitioner filed a petition for review from the trial court's ruling in the court of appeals and the appellate court granted review but denied relief.  (Answer, Exhs. S, V). Petitioner's motion for reconsideration of the appellate court's decision was denied. (Answer, Exhs. W-X). The Arizona Supreme Court subsequently denied Petitioner's petition for further review and a request for an evidentiary hearing on December 20, 2013. (Answer, Exhs. Y-Z).

## B.    FEDERAL HABEAS PETITION

Petitioner filed the instant petition for writ of habeas corpus, which is his third such proceeding in this Court, on January 8, 2014. Petitioner presents seven grounds for relief:

Ground One:        "Whether the Arizona Dept of Corrections erred in its

calculation of Stanhope's earned release credits (ERC's). Based on the 2002 amendment to the law.  The 2002 change in the law was a 'significant change in the law' that would affect the amount of time Stanhope would have to spend in prison. The change in law was intended by the Legislature to be applied retroactively, and Stanhope had a fundamental right to have the change in law applied to his sentence, and a due process right under the 14th Amend. to the U.S. Constitution to have the change in law applied properly.  The ADC did not apply the newly awarded ERC's to [Petitioner's] currently served sentence."

Ground Two:          "Whether the Arizona Dept of Corrections (ADC) improperly denied Petitioner a timely commutation hearing."

Ground Three:         "Whether the trial court erred and abused its discretion in ruling on material facts and making conclusions of law when deciding Petitioner['s] claims without holding an evidentiary hearing."

Ground Four:          "Whether the claims[]s raised by Petitioner were cognizable under Rule 32."

Ground Five:          "Did Stanhope factually still have more than one year left before earliest release date (PED-2-10-2012) when commute application was submitted on 1-18-2011? With a[n] offense date of June/1982, was the implementation of the 'one year to earliest release date' rule used to exclude/deny eligibility for a commute hearing a[n] 'ex post facto' change in the law and so unconstitutional when applied to Petitioner? Did AZ Atty. General Tom Horne, Asst. Atty. General Paul E. Carter enter into a conspiracy to coverup the fact the ADC had miscalculated Stanhope's release date?"

Ground Six:           "Is the Arizona State Court of Appeals, Div. II's finding that Petitioner is not entitled to ERC relief pursuant to the State Rule 32 process in conflict with Div. I of the State Court of Appeals finding

in *State v*[]. *Davis*, 148 Ariz. 62, 64-65 (1985)[,] where they granted relief pursuant to the State Rule 32 process? Would this Court clarify that conflict?"

Ground Seven:      "Was Petition[er] correct to rely on court[-]appointed attorney Emily Danies and the Arizona State Superior Court trial judge, that Rule 32 was the proper venue to bring these ERC and commutation claims?"

## II.    DISCUSSION

Respondents contend that: Petitioner's Ground One should be dismissed as a successive claim; Grounds Two through Six should be dismissed because they are not cognizable on habeas corpus review; and Ground Seven is procedurally defaulted. Respondents argue, in the alternative, that Grounds One and Two are also procedurally defaulted.

### A.    STANDARD OF REVIEW

Because Petitioner's federal habeas petition was filed after April 24, 1996, this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, ("AEDPA"), 28 U.S.C. § 2254 ("§ 2254). *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *see also Woodford v. Garceau*, 538 U.S. 202, 210 (2003).

Under the AEDPA, a writ of habeas corpus cannot be granted unless it appears that the petitioner has exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Rose v. Lundy*, 455 U.S. 509 (1982). To exhaust state court remedies, the petitioner must "fairly present" his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'"  *Castillo v. McFadden*, 399 F.3d 993, 998 n. 3 (9th Cir.2005) (quoting *Swoopes v. Sublett,* 196 F.3d 1008, 1010 (9th Cir. 1999)).

A claim is fairly presented if the petitioner has described the operative facts and the federal legal theory on which his claim is based. *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277–78 (1971). A petitioner must clearly alert the state court that he is alleging a specific federal constitutional violation. *See Casey v. Moore*, 386 F.3d 896, 913 (9th Cir. 2004). He must make the federal basis of the claim explicit either by citing specific provisions of federal law or federal case law, even if the federal basis of a claim is "self-evident," *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999), or by citing state cases that explicitly analyze the same federal constitutional claim, *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc).

In Arizona, there are two procedurally appropriate avenues for petitioners to exhaust federal constitutional claims: direct appeal and post-conviction relief ("PCR") proceedings. Rule 32 of the Arizona Rules of Criminal Procedure governs PCR proceedings and provides that a petitioner is precluded from relief on any claim that could have been raised on appeal or in a prior PCR petition. Ariz. R. Crim. P. 32.2(a)(3). The preclusive effect of Rule 32.2(a) may be avoided only if a claim falls within certain exceptions and the petitioner can justify his omission of the claim from a prior petition or his failure to present the claim in a timely manner. *See* Ariz. R. Crim. P. 32.1(d)–(h), 32.2(b), 32.4(a).

A habeas petitioner's claims may be precluded from federal review in two ways. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729–30. Second, a claim may be procedurally defaulted if the petitioner failed to present it in state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n.1; *see also Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998) (explaining that the district court must consider whether the claim could be pursued by any presently available state remedy). Therefore, in the present case, if there are claims that were not raised previously in state court, the Court must determine whether Petitioner has state remedies currently available to him pursuant to Rule 32. *See*

- 6 -

*Ortiz*, 149 F.3d at 931. If no remedies are currently available, Petitioner's claims are "technically" exhausted but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n.1.

If there are claims that were fairly presented in state court but found defaulted on state procedural grounds, such claims will be found procedurally defaulted in federal court so long as the state procedural bar was independent of federal law and adequate to warrant preclusion of federal review. *See Harris v. Reed*, 489 U.S. 255, 262 (1989). It is well established that Arizona's preclusion rule is independent of federal law, *see Stewart v. Smith*, 536 U.S. 856, 860 (2002), and the Ninth Circuit has repeatedly determined that Arizona regularly and consistently applies its procedural default rules such that they are an adequate bar to federal review of a claim. *See Hurles v. Ryan*, 752 F.3d 768, 780 (9th Cir.), *cert. denied*, 135 S. Ct. 710 (2014) (Arizona's waiver rules are independent and adequate bases for denying relief); *Ortiz*, 149 F.3d at 932 (Rule 32.2(a)(3) regularly followed and adequate); *Poland v. Stewart*, 117 F.3d 1094, 1106 (9th Cir. 1997) (finding Arizona not "irregular" in application of procedural default rules); *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1996) (same).

Nonetheless, because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. *Reed v. Ross*, 468 U.S. 1, 9 (1984). As a general matter, however, the Court will not review the merits of a procedurally defaulted claim unless the petitioner demonstrates legitimate cause for his failure to exhaust the claim in state court and prejudice from the alleged constitutional violation, or shows that a fundamental miscarriage of justice would result if the claim were not heard on the merits in federal court. *Coleman*, 501 U.S. at 750.

Generally, "cause" for a procedural default exists if the petitioner can demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *accord Coleman*, 501 U.S. at 753. "Prejudice" is actual harm resulting from the alleged constitutional error or violation. *Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir. 1998). To establish prejudice resulting from a procedural default, the petitioner bears the burden of

showing not merely that the errors at his trial were possibly prejudicial, but that they worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimension. *United States v. Frady*, 456 U.S. 152, 170 (1982).

A habeas petitioner "may also qualify for relief from his procedural default if he can show that the procedural default would result in a 'fundamental miscarriage of justice.'" *Cook v. Schriro*, 538 F.3d 1000, 1028 (9th Cir. 2008) (citing *Schlup v. Delo*, 513 U.S. 298, 321(1995)). *See also Majoy v. Roe*, 296 F.3d 770, 776–777 (9th Cir. 2002) (analyzing this exception in a non-capital case). This exception to the procedural default rule is limited to habeas petitioners who can establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *Schlup*, 513 U.S. at 327; *see also*, *Murray,* 477 U.S. at 496; *Cook*, 538 F.3d at 1028. "'To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eye-witness accounts, or critical physical evidence—that was not presented at trial.'"  *Cook*, 538 F.3d at 1028 (quoting *Schlup*, 513 U.S. at 324).

## B.   ANALYSIS

### 1.   GROUND ONE

Respondents asserted in their Answer that Petitioner's first ground for relief was an unauthorized "second or successive" claim that must be dismissed for lack of jurisdiction because the claim was available to Petitioner at the time he filed his second habeas petition.  (Answer at 6-7).  The Court agreed with Respondents and stayed this matter to allow Petitioner the opportunity to evaluate whether he wished to file an amended petition advancing Grounds Two through Seven only.  (March 9, 2015 Order (Doc. 32)).  While the stay was pending, Petitioner sought authorization from the Ninth Circuit Court of Appeals to file a second or successive petition.  (*See* Petitioner's "Motion for Authorization for a 'Second or Successive' Habeas Corpus Petition" *filed in Stanhope v. Ryan, docketed sub nom. Stanhope v. O'Neil,* (9th Cir. April 6, 2015) (No. 15-71055), ("Petitioner's Ninth Circuit Application"); Petitioner's Filing of Court Order

From the Ninth Circuit Court of Appeals (Doc. 39)); *see also* 28 U.S.C. §2244(b)(3) (a prisoner can file a second or successive habeas petition only after obtaining an authorization order from a three-judge panel in the appropriate court of appeals).   The Ninth Circuit denied Petitioner's request as "unnecessary" to the extent that he sought "authorization to allege a claim that in 2011 the Arizona Department of Corrections ('ADOC') erred in the manner in which it recalculated his sentence to include 21 days of presentence credit previously denied[.]  *See United States v. Buenrostro,* 638 F.3d 720, 725 (9th Cir. 2011) (per curium) (prisoner may file second-in-time petition raising claim that became ripe for adjudication after conclusion of first habeas proceeding)."  *Stanhope v. O'Neil,* No. 15-71055 (9th Cir. June 25, 2015 Order at 1) ("Ninth Circuit's Order").[2]  The Ninth Circuit denied Petitioner's request to the extent that he sought "authorization to allege that ADOC erred by failing to award [him] earned release credits in accordance with a 2002 change in Arizona law. . ." because that claim was "subject to 28 U.S.C. §2244(b)(2)" which prohibits the filing of a second or successive habeas petition.  (*Id.* at 1-2).

Ground One includes Petitioner's contention that due to a 2002 change in Arizona law, he became eligible to receive 21 days of ERC[3] for time spent in presentence incarceration.   In February 2011, Petitioner filed in state court a *pro se* "Motion for Goodtime Jail Credits Pursuant to ARS § 41-1604.07(A)" advancing his claim that ADOC had not awarded the 21 days of credit.  (*See* Reply, Exh. 2 (Doc. 31 at 21-22); *see also id.* at Exh. 4 (Petitioner's Amended Motion for Good Time Jail Credits, which included a claim that Petitioner was improperly denied a commutation hearing) (Doc. 31 at 28-35)).   Petitioner requested that the 21 days of ERC at issue be applied to the sentences that he was currently serving, which were the sentences on counts 3 and 4.

---

[2] The Ninth Circuit's Order is attached to Petitioner's Filing of Court Order from the Ninth Circuit Court of Appeals (Doc. 39).

[3] Review of Petitioner's Petition and Reply, the state court filings in the record, and Petitioner's Ninth Circuit Application reflects that the amount of ERC at issue is 21 days.

(Reply, Exhs. 2, 4). The state trial court appointed counsel, Emily Danies, Esq., who on August 9, 2011, filed a "Notice of Relief from Department of Corrections in Lieu of Rule 32 Petition" stating that the ADOC had informed her that Petitioner was not eligible for commutation since it was within one year of the conclusion of the first part of the consecutive sentence, and that ADOC had recalculated Petitioner's sentence to include 21 days of presentence credit previously denied. (Answer, Exh. I; Reply, Exh. 2 (Doc. 31 at 23)). Ms. Danies also sent Petitioner a letter informing him that his ERC would be included in the next calculation of his time, and that the commutation hearing could not occur during the last year of a sentence. (Reply, Exh. 8.)

Thereafter, Petitioner, acting *pro se*, initiated a seventh post-conviction proceeding in the state trial court on January 6, 2012. (Answer, Exh. F). The trial court ordered that Petitioner's previous counsel, Ms. Danies, transfer her records to Petitioner. (*Id.*, Exh. G). Ms. Danies filed a notice of transmittal of file. (*Id.*, Exh. H; *see also id.*, Exh. I (Response to Petitioner's Notice of Receipt of Documentation from Attorney Emily Danies)). She also filed a response to a notice she had received from Petitioner. (*Id.,* Exh. I).

On April 11, 2012, Petitioner filed a *pro se* Rule 32 Petition ("Seventh PCR Petition") asserting that the ADOC failed to properly credit him with the 21 days at issue and also improperly failed to provide him with a commutation hearing.  (Answer, Exh. J). Petitioner asserted that ADOC should have credited the sentence he was serving in 2002, when the amendment came into effect which made him eligible to receive such credit. (*Id.*).   According to Petitioner, none of his sentences were credited.   (*Id.*). Petitioner requested that the court award the 21 days of credit to the sentences for counts 5, 6, and 7, which he was serving at the time he filed his Seventh PCR Petition.  (*Id.*). Petitioner simultaneously filed a "Motion to Have Witnesses Called to Testify a[t] the Rule 32 Evidentiary Hearing, Production of Documents Request." (Answer, Exh. K).

The trial court denied Petitioner's Motion to Have Witnesses Called to Testify at the Rule 32 Evidentiary Hearing and for documents as premature.  (Answer, Exh. N).  On October 17, 2012, the trial court denied Petitioner's Seventh PCR Petition.  (Answer,

Exh. P).  With regard to Petitioner's claim concerning the ERC, the trial court denied the claim based upon the Notice of Relief filed by Ms. Danies, Petitioner's previously appointed counsel, and a letter from the Attorney General's office to Ms. Danies stating that ADOC "has in fact recalculated Petitioner's sentence to include 21 days of presentence credit previously denied."  (Answer, Exh. P).

Petitioner filed a motion for a rehearing, which the trial court denied.  (Answer, Exhs. Q, R).  Petitioner next filed a petition for appellate court review.  (Answer, Exh. S).

In opposing Petitioner's petition for review of the denial of his Seventh PCR Petition, the state argued that the credit had been included in the earned release credit calculation concerning Petitioner's sentence on counts 1 and 2 which, according to the state, resulted in an ERC date of April 6, 1998.  (Answer, Exh. T at 4).  The state also pointed out that before Petitioner reached that ERC date, he was granted parole to his consecutive sentences on counts 3 and 4, effective January 17, 1997.  (*Id.*).  The state argued that Petitioner, therefore, was awarded the credits and, in any event, the issue was moot because Petitioner "was paroled to his consecutive sentence before he even reached his ERC date."  (*Id.* at 7).  Petitioner countered that the state had not carried its burden of showing that the 21 days had in fact been included in the earned release credit calculation, especially because the calculation pertained to a sentence that ended long before the 2002 change in the law permitting the additional 21 days of ERC.  (*See* Answer, Exh U).  Petitioner also objected to the state opening an expired sentence to apply the ERC at issue.  (*Id.*).  The appellate court granted review but denied relief because Petitioner's claims were not cognizable under Rule 32.  (Answer, Exh. V).

Although the Ninth Circuit denied Petitioner authorization to allege that ADOC failed to award earned release credits in accordance with a 2002 change in the law, the court also stated that Petitioner did not require authorization "to allege a claim that in 2011 the….[ADOC] erred in the manner in which it recalculated his sentence to include 21 days of presentence credit previously denied[.]"  (Ninth Circuit Order at 1).  Thus, to any extent that Petitioner alleges in Ground One that ADOC did not award him ERC in

accordance with the 2002 change in Arizona law, such a claim is successive.  However, based upon the Ninth Circuit's Order, Petitioner may proceed to the extent that he alleges in Ground One that the 21 days of ERC awarded pursuant to the 2002 change were not properly applied to his sentence.  According to Petitioner, the ERC should have been applied to the sentences on counts 3 and 4 that he was serving when the law came into effect in 2002, not to his sentences on counts 1 and 2 that had expired before the law changed.  (Petition at 6).  Petitioner asserts that because the ERC was not applied to the sentences on counts 3 and 4, the credit should be applied to the sentences he is currently serving on counts 5, 6, and 7.  (*Id.*).

Respondents assert that Ground One is procedurally defaulted because the state appellate court found Petitioner's claims were not cognizable under Ariz.R.Crim.P. 32.  According to Respondents, that ruling constitutes a procedural bar to Petitioner raising the same claim on federal habeas review and results in procedural default.  (Answer at 13-14 ).

Generally, "[f]ederal courts 'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Bennett v. Mueller,* 322 F.3d 573, 580 (9th Cir. 2003) (quoting *Coleman*, 501 U.S. at 729).  "To be deemed adequate, the state law ground for decision must be well-established and consistently applied." *Id.* 593 (citing *Poland v. Stewart,* 169 F.3d 573, 577 (9th Cir.1999) ("A state procedural rule constitutes an adequate bar to federal court review if it was []firmly established and regularly followed[] at the time it was applied by the state court.").  Arizona case law appears to consistently hold that the appropriate vehicle to raise claims concerning good time credits similar to those advanced by Petitioner is a special action.  *See State v. Davis,* 148 Ariz. 62, 64, 712 P.2d 975, 977 (App 1985) (claim concerning computation of good time credits was not cognizable under Rule 32 and was construed as a special action); *see also Tittle v. State,* 169 Ariz. 8, 815 P.2d 267 (App. 1991) (addressing claim regarding eligibility for good time credits as a special action); *cf. State v. Goldin,*239

Ariz. 12, 17, 365 P.3d 364, 369 (App. 2015) ("a miscalculation by DOC, without more, would not be grounds for relief under Rule 32") (citing Ariz.R.Crim.P. 32.1(d) & cmt.; *Davis,* 148 Ariz. at 64, 712 P.2d at 977). Yet, for a claim to be procedurally defaulted so as to preclude federal habeas review, the petitioner must not be able to return to state court to properly exhaust the claim. Respondents have not shown that Petitioner is unable to return to state court to file a special action. In such circumstances, Petitioner's claim remains unexhausted, but is not procedurally defaulted. Consequently, in this case, Petitioner's failure to exhaust state remedies does not render the claim unreviewable because this Court may deny a petition for writ of habeas corpus on the merits, notwithstanding the petitioner's failure to exhaust. *See* 28 U.S.C. §2254(b)(2); *Cassett,* 406 F.3d at 623-24 (a federal court may deny an unexhausted petition on the merits when the petition does not raise a colorable federal claim).[4]

Regardless of whether the claim is exhausted, it is without merit. When the law was changed in 2002 so as to make Petitioner eligible for the 21 days of ERC, he was serving concurrent sentences on counts 3 and 4. Even if it was improper for ADOC to apply the 21 days of ERC to a sentence that had expired before the law came into effect (as ADOC claimed it did before the state appellate court), the record reflects that Petitioner was ultimately granted parole on his sentences on counts 3 and 4 on December 19, 2011. (*See* Answer, Exh. Q, internal exh. 2 at 2 (Doc. 22-1 at ¶¶10, 12)). Had Petitioner not been granted parole on sentences 3 and 4, the sentences were calculated to expire on January 16, 2018, and the projected earned release credit date was calculated to fall on October 16, 2012[5]. (*See id.*). Therefore, even if ADOC improperly failed to grant Petitioner credit for the 21 days at issue on sentences 3 and 4, his early grant to parole—

---

[4] It is also arguable that Petitioner's claim is actually exhausted given that the appellate court did not *sua sponte* exercise discretion to treat Petitioner's Seventh PCR Petition as a special action despite having authority to do so, *see Davis,* 148 Ariz. at 64, 712 P.2d at 977, and the court also denied Petitioner's motion for reconsideration requesting in part that the matter be remanded to the trial court as a special action (Answer, Exhs. W, X).

[5] Granting Petitioner the benefit of the doubt, the Court will presume that the projected earned release credit date does not take into account the 21 days at issue here.

which occurred more than 21 days prior to the end of his calculated ERC release date—moots the issue.  Consequently, Petitioner's Ground One claim with regard to ADOC's 2011 calculation concerning the 21 days of presentence credit is denied on the merits.

## 2. GROUNDS TWO AND FIVE

Petitioner's Grounds Two and Five raise issues relating to ADOC's denial of Petitioner's January 2011 request for a commutation hearing.  In Ground Two, Petitioner argues that the ADOC improperly denied him a timely computation hearing in violation of his right to due process under the Fourteenth Amendment.  In Ground Five, Petitioner argues that he was eligible for a commutation hearing and that then Arizona Attorney General Tom Horne and Assistant Arizona Attorney General Paul Carter "conspire[d] with the AD[O]C to cover up and hide the fact that the AD[O]C violated Stanhope's sentence and due process rights by not complying with the terms of his sentence. . . ." (Petition at 10).  Petitioner requests that the Court direct ADOC to award him "336 days time served on his current sentence pursuant to their refusal to allow him a commutation hearing per the proper commute application submitted on 11-18-2011 that they improperly ruled him ineligible for and was then paroled on 12-19-11." (*Id.* at 14).

Respondents contend that both grounds for relief are not "cognizable on habeas review because a prisoner has 'no constitutional or inherent right to commutation of his sentence.'"  (Answer at 8 (quoting *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 464 (1981)).  Respondents also point out that "Arizona's clemency statutes do not provide a state prisoner with a protected liberty interest in having his sentence commuted."  (*Id.* (citing *Woratzeck v. Stewart,* 118 F.3d 648, 653 (9th Cir. (1997) ("There is no constitutional right to a clemency hearing.")).

It is well-settled that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."  *Preiser v. Rodriguez,* 411 U.S. 475, 500 (1973); *see also Skinner v. Switzer,* 562 U.S. 521, 525 (2011) ("Habeas [corpus] is the exclusive

remedy. . . for the prisoner who seeks 'immediate or speedier release' from confinement.") (quoting *Wilkinson v. Dotson,* 544 U.S. 74, 82 (2005)); *Nettles v. Grounds,* 830 F.3d 922 (9th Cir. 2016) (en banc), *cert denied,* __ U.S. __, 137 S.Ct. 645 (2017).  However, a habeas corpus action is not the proper method to address issues that will not necessarily impact the fact or duration of an inmate's confinement.  *See Nettles,* 830 F.3d 934-35.

In *Nettles* the petitioner challenged a disciplinary proceeding that resulted in delay of his parole hearing and constituted grounds for future denial of parole.  *Id.* at 927.  The court held that because the challenged disciplinary proceeding would not necessarily impact the fact or duration of his conferment, Nettles's claims did not fall within "the core of habeas corpus" and, therefore, were not appropriately brought as a habeas corpus action.  *Id.* at 927-31. In so holding, the *Nettles* court recognized that:

> Success on the merits of Nettles's claim would not necessarily lead to immediate or speedier release because the expungement of the challenged disciplinary violation would not necessarily lead to a grant of parole. Under California law, the parole board must consider "[a]ll relevant, reliable information' in determining suitability for parole. Cal. Code Regs. tit. 15, § 2281(b). A rules violation is merely one of the factors shedding light on whether a prisoner 'constitutes a current threat to public safety," *In re Lawrence*, 44 Cal.4th 1181, 82 Cal.Rptr.3d 169, 190 P.3d 535, 553 (2008). Because the parole board has the authority to deny parole "on the basis of any of the grounds presently available to it," *Ramirez* [v. *Galaza*]*,* 334 F.3d [850,] at 859 [(9th Cir. 2003)], the presence of a disciplinary infraction does not compel the denial of parole, nor does an absence of an infraction compel the grant of parole.

*Id.* at 935.

Arizona law is clear that regardless of any recommendation by the Arizona Board of Executive Clemency, ("the Board") "'[t]he governor retains ultimate authority to grant or deny a recommended commutation.'" *State v. Vera,* 235 Ariz. 571, 576, 334 P.3d 754, 759 (App. 2014) (quoting *McDonald v. Thomas,* 202 Ariz. 35, 40 P.3d 819, 824 (2002) and citing *Wigglesworth v. Mauldin*, 195 Ariz. 432, 990 P.2d 26, 33 (App.1999) (under present law, "an Arizona governor's discretion to act on the Board's recommendations remains unfettered, subjective, arbitrary, and a matter of grace.")); *see also Banks v.*

*Arizona State Board of Pardons and Paroles,* 129 Ariz. 199, 201, 629 P.2d 1035, 1037 (App. 1981) ("[T]he Arizona courts have held that commutation is a matter of grace, not of right.").   Consequently, even if Petitioner were to succeed on his claim that he was improperly denied a commutation hearing, it does not necessarily follow that such a determination would result in his immediate release from custody or the shortening of his sentence.   As in *Nettles*, the absence of a commutation hearing in this case does not compel the grant of clemency.   Accordingly, Petitioner's claims arising from the allegation that he was improperly denied a commutation hearing do "not fall within the core of habeas corpus" and are not properly brought pursuant to §2254.  *See Nettles,* 830 F.3d at 935 (internal quotation marks and citation omitted).

### 3.   GROUND THREE

Petitioner argues the state court "abused its discretion. . ." by not holding an evidentiary hearing on his Seventh PCR Petition, which he contends violated his right to due process under the Fourteenth Amendment.   (Petition at 8). Respondents seek dismissal of Ground Three because it is not cognizable on habeas corpus review. (Answer at 8).

Respondents are correct.  The Ninth Circuit "has specifically stated that federal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings."  *Ortiz,,* 149 F.3d at 939 (citations omitted).  *See also Gerlaugh v. Stewart,* 129 F.3d 1027, 1045 (9th Cir. 1997) (errors allegedly occurring during state post-conviction proceedings are not cognizable in a federal habeas action); *Franzen v. Brinkman,* 877 F.2d 26, 26 (9th Cir.1989) ("A [habeas corpus] petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings."); *Leon v. Ryan,* 2014 289980, at *9-10 (D. Ariz. Jan 27, 2014) (claim that state court errored by not granting an evidentiary hearing during post-conviction review proceeding was not cognizable on habeas review).  Ground Three is dismissed.

### 4.   GROUND FOUR

In denying relief on review of Petitioner's Seventh PCR Petition, the appellate

court held that Petitioner's claims were not properly brought as a post-conviction review petition under Ariz.R.Cr.P. 32.1, because "[c]hallenges to the ADOC's computation of credit 'are not cognizable under Rule 32 unless they result in the defendant remaining in custody when he should otherwise be free.'"  (Answer, Exh. Y at 3 (*quoting Davis,* 148 Ariz. at 64, 712 P.2d at 977)).  Petitioner argues in Ground Four that his Seventh PCR Petition, which contained his claims that ADOC improperly denied him ERC and a timely commutation hearing, was properly brought pursuant to Ariz.R.Crim.P. 32. (Petition at 9).  According to Petitioner, he has a "due process right and liberty interest in his ERC[] and how long he'll spend in prison.  That due process rights extends to his receiving a timely [and] meaningful commutation hearing[,] too." (*Id.*).

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United Sates." *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991); *see also Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Bonin v. Calderon*, 59 F.3d 815, 841 (9th Cir. 1995). Alleged errors in the application of state law are not cognizable in federal habeas corpus. *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Souch v. Schaivo*, 289 F.3d 616, 623 (9th Cir. 2002); *Bonin v. Calderon*, 59 F.3d 815, 841 (9th Cir. 1995).  Nor may a petitioner "transform a state-law issue into a federal one merely by asserting a violation of due process." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) (citations omitted). Instead, on habeas review, the federal courts are to "accept a state court's interpretation of state law, . . . and alleged errors in the application of state law are not cognizable in federal habeas corpus." *Id.; see also  Franzen,* 877 F.2d at 26 (assertions of error in the state post-conviction proceeding are not proper grounds for habeas relief).

Moreover, even if the Court were to consider Plaintiff's assertion of due process violation at face value, his allegations do not demonstrate a violation.  Petitioner argued to the state court that he was entitled to relief under Rule 32.1(d), which permits relief only if he were "being held in custody after the sentence imposed has expired."

Ariz.R.Crim.P. 32.1(d); *see also* Ariz.R.Crim.P. 32.1(d) cmt ("Paragraph (d) is intended to include claims of more traditional types--*e.g.,* miscalculation of sentence, questions of computation of good time--which result in the defendant's remaining in custody when he should be free.").  Petitioner did not argue that he would be entitled to immediate release, nor did he request same.  Instead, he requested an award of 21 days of earned release credit plus an additional 336 days of credit for the time between when he applied for a commutation hearing and when he began serving his next set of consecutive sentences.  Further, although Petitioner argued to the state court that the denial of a commutation hearing violated his constitutional rights, Rule 32.1 does not apply to claims of an alleged constitutional violation occurring during a petitioner's incarceration.  *See Davis,* 148 Ariz. at 64, 712 P.2d at 977.  In sum, Petitioner advances no federal claim and, to any extent this claim is somehow within the province of federal habeas relief, examination of Rule 32.1 and the comments thereto supports the conclusion that his claims were not cognizable under that Rule.  Petitioner's Ground Four is dismissed.

### 5.    GROUND SIX

Petitioner's statement of claim in Ground Six reads:  "Is the Arizona State Court of Appeals, Div. II's finding that Petitioner is not entitled to ERC relief pursuant to the State Rule 32 process in conflict with Div. I of the State Court of Appeals finding in *State v*[]. *Davis*, 148 Ariz. 62, 64-65 (1985)[,] where they granted relief pursuant to the State Rule 32 process? Would this Court clarify that conflict?"  (Petition at 11).  According to Petitioner, "with the constitutional guarantee to habeas corpus, the *Davis* case should be controlling."  (*Id.*).

In *Davis,* like the instant case, the Arizona appellate court held that a prisoner's challenge regarding computation of good time credit was not cognizable under Ariz.R.Crim.P. 32.1 because even if the claim was meritorious, the prisoner would not be entitled to immediate release from imprisonment.  *Davis,* 148 Ariz. at 64, 712 P.2d at 977.  The court went on to consider the matter "as an appeal from a denial of special action relief in the trial court[]" and ultimately granted relief.  *Id.* at 64-65, 712 P.2d at

977-78 (recognizing that "where relief may be granted by extraordinary writ (special action), this court may grant the appropriate relief even though the writ applied for or the motion is not aptly titled."). In Arizona, "[a]cceptance of special action jurisdiction is highly discretionary." *Pompa v. Superior Court,* 187 Ariz. 531, 533, 931 P.2d 431, 433 (App. 1997). Petitioner requests that this Court "clarify" what he perceives as a "conflict" between *Davis* and the appellate court's decision in his case. In Petitioner's case, the appellate court did not discuss in its decision whether special action jurisdiction was appropriate. The appellate court also subsequently denied Petitioner's motion for reconsideration requesting, among other things, that the court remand the matter to the trial court as a special action. (Answer, Exhs. W, X).

As with Ground Four, Petitioner's Ground Six involves questions of state law and, at best, allegations of error in the interpretation or application of state law. In Ground Six, Petitioner does not identify any specific federal constitutional violation. Petitioner's Ground Six, like Ground Four, is not cognizable on habeas review. As discussed above, federal habeas relief is not available for alleged error in the interpretation and application of state law. *Wilson,* 562 U.S. at 5; *Estelle,* 502 U.S. at 62; *Souch,* 289 F.3d at 623; *Bonin*, 59 F.3d at 841. Petitioner's Ground Six is dismissed.

### 6.   GROUND SEVEN

Petitioner claims that the trial court abused its discretion and his court-appointed counsel, Ms. Danies, "committed ineffective assistance of counsel . . ." by improperly treating his claims as arising under Rule 32. (Petition at 12). Petitioner's claim concerning the trial court's abuse of discretion does not state a violation of federal constitutional law. Additionally, Respondents persuasively point out that Petitioner failed to exhaust his Ground 7 claims because he did not present them to the trial court. Although Petitioner indicates that he presented this claim in his Motion to Reconsider filed in the appellate court, (Petition at 12), PCR claims presented for the first time on discretionary appeal are not fairly presented. *Casey,* 386 F.3d at 918.

Further, Petitioner's claim is procedurally defaulted because he cannot return to

state court to properly exhaust the claim.  Petitioner would no longer have a remedy if he returned to the Arizona courts to present the claims he raises here.  Rule 32.2(a)(3) of the Arizona Rules of Criminal Procedure provides that a defendant is precluded from post-conviction relief on any ground that was waived in any previous collateral proceeding.  Further, the time has now passed to seek such review.  *See* Ariz.R.Crim.P. 32.4(a); *see also Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir 2002) (a state post-conviction action is futile when it is time-barred).  Nor do the claims qualify for any of the timeliness exceptions. See Ariz.R.Crim.P. 32.1(d)-(h).  Thus, any additional petition would be subject to summary dismissal. *See State v. Rosario*, 195 Ariz. 264, 266, 987 P.2d 226, 228 (App. 1999); *State v. Jones*, 182 Ariz. 432, 897 P.2d 734 (App. 1995); *Moreno v. Gonzalez*, 192 Ariz. 131, 135, 962 P.2d 205, 209 (1998) (timeliness is a separate inquiry from preclusion).  On the instant record, Petitioner's claims raised in his federal habeas Petition are procedurally defaulted.[6] *Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007) ("[W]here a petitioner did not properly exhaust state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the petitioner's claim is procedurally defaulted.") (quoting *Coleman*, 501 U.S. at 735 n. 1 ); *Park v. California*, 202 F.3d 1146, 1150–51 (9th Cir. 2000) (federal habeas review is precluded where petitioner has not raised his claim in the state courts and the time for doing so has expired); *Parra v. Ryan*, No. 2014 WL 3747635 at *4 (D. Ariz. July 30, 2014) (same).

Petitioner has not established cause or prejudice to overcome the procedural default in this case.  Nor has he argued that a fundamental miscarriage of justice has

---

[6] Because these claims are procedurally defaulted pursuant to Rule 32.4(a) of the Arizona Rules of Criminal Procedure, this Court need not determine whether the claims are of "sufficient constitutional magnitude" to require a knowing, voluntary, and intelligent waiver. *See e.g. Cassett,* 406 F.3d 614. Moreover, the procedural timeliness bar of Rule 32.4(a) is clear, consistently applied, and well established. *Powell v. Lambert,* 357 F.3d 871 (9th Cir. 2004); *see e.g., Rosario,* 195 Ariz. 264, 987 P.2d 226 (where petitioner did not raise claims pursuant to Rule 32.1(d) through (g), the petition could be summarily dismissed if untimely); *Jones,* 182 Ariz. at 434, 897 P.2d at 736; *see also Wagner v. Stewart,* 2008 WL 169639, *9 (D.Ariz. Jan. 16, 2008).

occurred which would require this Court to address his claims on the merits. Accordingly, Petitioner's procedural default cannot be excused. Petitioner's Ground Seven as procedurally defaulted.

Moreover, the only federal constitutional claim set out in Ground Seven concerns Petitioner's allegation of ineffective assistance of PCR counsel who represented him during his Seventh PCR proceeding. Petitioner cannot raise ineffectiveness of PCR counsel as a freestanding constitutional claim. *See Martinez v. Ryan*, __ U.S. __, 132 S.Ct. 1309, 1315 (2012); *Coleman,,* 501 U.S. at 756–57 ("a criminal defendant has no right to counsel beyond his first appeal in pursuing state discretionary or collateral review[.]"). *See also* 28 U.S.C. § 2254(i). Instead, a claim that PCR counsel was ineffective can support an equitable remedy to allow a federal habeas petitioner in particular circumstances to attempt to overcome procedural bars to a claim that trial counsel was ineffective. *See Martinez,* 132 S.Ct. at 1320 ("Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."). Thus, even if Petitioner had exhausted his claim, he would still not be entitled to federal habeas relief.

## III.   CONCLUSION

Petitioner is not entitled to habeas relief on any of the claims presented. As discussed above, Grounds Two and Five do not fall within the core of habeas corpus. Generally, a habeas petition may be construed as a complaint alleging civil rights violations under 42 U.S.C. § 1983 where the pleading "is amenable to conversion on its face, meaning that it names the correct defendants and seeks the correct relief[.]" *Nettles,* 830 F.3d at 936 (internal quotation marks and citation omitted) (before a petition may be converted, the petitioner should also grant informed consent to convert the pleading). Here, the Court declines to exercise its discretion to convert the Petition to a civil rights

complaint.  First, "the Court cannot construe a habeas corpus petition as a § 1983 complaint if it contains claims that fall within the 'core of habeas corpus,'. . . ."  *Lyles v. Los Angeles County Courts,* 2016 WL 4472934 at *4 (quoting *Nettles,* 830 F.3 at 927); *see also Nettles,* 830 F.3d at 927 ("The [U.S. Supreme] Court has long held that habeas is the exclusive vehicle for claims brought by state prisoners that fall within the core of habeas, and such claims may not be brought in a § 1983 action.").

Second, it does not appear that Petitioner has named "the correct defendants" and seeks "the correct relief."  *See Rizzo v. Goode*, 423 U.S. 362, 371-73, 377 (1976) (To state a valid claim under §1983, the plaintiff must allege that he suffered a specific injury as a result of specific conduct of a defendant and show some affirmative link between the injury and that defendant's conduct.); *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir. 1998) ("Liability under § 1983 must be based on the personal involvement of the defendant.").  Moreover, to the extent that Plaintiff names ADOC Director Charles Ryan, to establish liability under § 1983 for Director Ryan in his official capacity, the plaintiff must allege injuries resulting from a policy, practice, or custom of the agency over which that individual has final policy-making authority. *See Cortez v. County of Los Angeles*, 294 F.3d 1186, 1188 (9th Cir. 2002). Further, there is no respondeat superior liability under § 1983, which means that a defendant's position as the supervisor of someone who allegedly violated a plaintiff's constitutional rights does not make him liable. *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989) (citation omitted). A supervisor in his individual capacity "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor,* 880 F.2d at 1045.  To any extent that Petitioner would seek to sue Charles Ryan in his official capacity as Director of ADOC, Petitioner must allege facts showing that ADOC's policy or custom led to the alleged violation. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).

Additionally, a "habeas corpus action and a prisoner civil rights suit differ in a

variety of respects—such as the proper defendant, filing fees, the means of collecting them, and restrictions on future filings—that may make recharacterization impossible or, if possible, disadvantageous to the prisoner compared to a dismissal without prejudice of his petition for habeas corpus." *Nettles,* 830 F.3d at 935 (internal quotation marks and citation omitted).  For instance, the congressionally mandated filing fee for a prisoner civil rights complaint is currently $350, whereas the fee for a habeas petition is $5.  *See* 28 U.S.C. § 1914(a).  While a civil rights action may proceed despite the prisoner's inability to prepay the entire $350 if he is granted leave to proceed in forma pauperis ("IFP") under 28 U.S.C. § 1915(a), he must still agree to pay the entire filing fee in installments, even if his complaint is ultimately dismissed. See 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore,* 281 F.3d 844, 847 (9th Cir. 2002). Here, Petitioner has neither paid the required fee to file a civil rights action nor filed an IFP request to proceed with a § 1983 action.[7]   In addition, if Petitioner files an IFP request, the Court would be obligated to screen the converted petition under 28 U.S.C. § 1915(e)(2) to determine whether the action is frivolous or malicious, fails to state a claim on which relief might be granted, or seeks monetary relief against a defendant who is immune from such relief. And if the converted petition were ultimately dismissed on the grounds that it is frivolous, malicious, or fails to state a claim, that dismissal would count as a "strike" against Petitioner for purposes of 28 U.S.C. § 1915(g), which provides that a prisoner who has three "strikes" may not bring an action or appeal without prepayment of the full filing fee "unless the prisoner is under imminent danger of serious physical injury."[8]

Consequently, the Court finds that it is appropriate to dismiss Grounds Two and Five of the Petition without prejudice so that Petitioner has the opportunity to decide

---

[7] The form to proceed in forma pauperis in a habeas proceeding, which Petitioner submitted at the commencement of this action (Doc. 2), differs from that required of prisoner's in civil rights actions.

[8] Nor do any statute of limitations implications give this Court pause.  Grounds Two and Five arose in 2011 and Petitioner did not file his habeas petition until 2014.  *See TwoRivers v. Lewis,* 174 F.3d 987, 991 (9th Cir. 1999) (two-year statute of limitations applies).   To the extent that the statute of limitations may be implicated, the same equitable tolling arguments that Petitioner could raise were the petition converted, remain available upon refiling of the claims.

1   whether he wishes to incur the required filing fee and raise his claims through a civil

2   rights complaint.[9]  *See Reyes v. California Dep't of Corrections,* 2017 WL 104313 (C.D.

3   Cal. Jan. 9, 2017) (declining to exercise discretion to convert habeas petition to §1983

4   complaint under *Nettles*); *Allsworth v. Langford,* 2016 WL 4975132 (C.D. Cal. Sept. 15,

5   2016) (same).

### IV.   CERTIFICATE OF APPEALABILITY

6       In the event Petitioner appeals from this Court's judgment, and in the interests of

7   conserving scarce resources that otherwise might be consumed drafting an application for

8   a certificate of appealability to this Court, the Court on its own initiative has evaluated

9   the claims within the Petition for suitability for the issuance of a certificate of

10  appealability. *See* 28 U.S.C. § 2253(c); Fed.R.App.P. 22(b); *Turner v. Calderon*, 281

11  F.3d 851, 864–65 (9th Cir. 2002).

12      Pursuant to 28 U.S.C. § 2253(c)(2), a Certificate of Appealability ("COA") may

13  issue only when a petitioner "has made a substantial showing of the denial of a

14  constitutional right." This showing can be established by demonstrating that "reasonable

15  jurists could debate whether (or, for that matter, agree that) the petition should have been

16  resolved in a different manner" or that the issues were "adequate to deserve

17  encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For

18  procedural rulings, a COA will issue only if reasonable jurists could debate whether the

19  petition states a valid claim of the denial of a constitutional right and whether the court's

20  procedural ruling was correct. *Id.*

21      Upon review of the record in light of the standards for granting a certificate of

22  appealability, the Court concludes that a certificate shall not issue as the resolution of the

23  / / / /

---

[9] If Petitioner elects to bring a civil rights action based on the instant claims, he must complete the applicable federal complaint forms and submit them with either the $350 filing fee (plus the $50.00 filing fee imposed by this Court, for a total filing fee of $400) or a properly supported IFP request. *See* 28 U.S.C. § 1915(a)(1). He should not use the case number from this action, as the Clerk will assign a new case number to the civil rights action.

instant Petition is not debatable among reasonable jurists and does not deserve further proceedings.

Accordingly, for the foregoing reasons,

IT IS ORDERED that Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1) is:

(1)   DENIED with regard to Ground One; and

(2)   DISMISSED with regard to Grounds Two through Seven.

IT IS FURTHER ORDERED that a Certificate of Appealability is DENIED and shall not issue.

The Clerk of Court is DIRECTED to send to Petitioner:

(1)   a copy of the Instructions for a Prisoner Filing a Civil Rights Complaint in the U.S. District Court for the District of Arizona; and

(2)   a copy of the Instructions for Prisoners Applying for Leave to Proceed In Forma Pauperis Pursuant to 28 U.S.C. § 1915 in a Civil Action (Non-habeas) in Federal Court.

The Clerk of Court is FURTHER DIRECTED to enter judgment consistent with this Order and to close the file in this matter.

Dated this 28th day of March, 2017.

Bernardo P. Velasco
United States Magistrate Judge